JESSIE TAYLOR, Resondent, v. WILLIAM E. HUDSON, Executor of the Estate of ELIZA A. KERBY, Deceased, Appellant.

**Kansas City Court of Appeals, May 16, 1910.**

1. **WAGES: Implied Contract: Members of Family.** Plaintiff, when about 16 years of age went to live with John R. Kerby and his wife, Eliza A. Kerby, who was the aunt of plaintiff, as a member of his family. After his death, with the exception of occasional short absences, plaintiff lived with her aunt until her death, performing the services sued for. The evidence showed that during this time the aunt did not treat plaintiff in the same way as her husband had done. Plaintiff earned some money outside of the household, and her father furnished her clothing. Mrs. Kerby had always told plaintiff that plaintiff would be provided for. There was sufficient evidence in the case to support a finding of an implied contract to pay plaintiff for the services rendered.

2. ———: ———: ———. Such a contract may be proved by circumstantial evidence, and when proved it will support either an action for specific performance, or an action for the value of the services rendered.

Appeal from Carroll Circuit Court.—*Hon. Francis H. Trimble*, Judge.

AFFIRMED.

*Jones & Conkling* for appellant.

(1) Defendant's instruction in the nature of a demurrer to the evidence tendered at the close of all the evidence in the case should have been given. There was not sufficient evidence of a contract. The law will not imply a contract from loose declarations such as are relied on in this case; neither is there any evidence even approximating the date of any contract. Woods v. Land, 30 Mo. App. 176; Louder v. Hart, 52 Mo. App. 381; Calahan v. Riggins, 43 Mo. App. 130; Cowell v. Roberts, 79 Mo. 218; Guenther v. Birkicht, 22 Mo. 439.

(2)   It being shown that plaintiff had resided with and been recognized as a member of the Kirby home from and after the time she first went there, the law presumes that any services rendered by her were a gratuity and casts upon her the burden of proving an express contract or agreement by which she was to be compensated for her services. Fitzpatrick v. Dooley, 112 Mo. App. 165; Louder v. Hart, 52 Mo. App. 381; Calahan v. Riggins, 43 Mo. App. 130; Cowell v. Roberts, 79 Mo. 218; Smith v. Myers, 19 Mo. 433; Guenther v. Birkicht, 22 Mo. 439.   (3)   In the record the evidence fails to show a contract, express or implied. The most favorable construction to plaintiff of the declarations relied on is that Mrs. Kerby intended to make a bequest to plaintiff in her will. Where this is true, an action on contract cannot be maintained. Guenther v. Birkicht, admr., 22 Mo. 443; Osbourn v. Governors of Guy's Hospital (2 Strange 728); Andrews v. Foster, 17 Verm. 556.   (4)   Claims of this character are a very dangerous class of cases and courts scrutinize them closely. Woods v. Land, 30 Mo. App. 181.   (5)   The fact that no books were kept and no payments made on account in connection with the other evidence shows that no contract of any kind existed between plaintiff and deceased. Woods v. Land, 30 Mo. App. 181; Cowell v. Roberts, 79 Mo. 218.

*Lozier, Morris & Atwood* for respondent.

(1)   Defendant's instruction in the nature of a demurrer tendered at the close of all of the evidence, was properly refused. If we concede that the family relationship existed, there was ample evidence to establish an implied contract on the part of deceased to pay plaintiff for her services. The intention to charge by one, and to pay by the other, need not be shown by direct or positive testimony, but may be shown by facts and circumstances from which such intention may

be inferred. McMorrow v. Dowell, 116 Mo. App. 289; Birch v. Birch, 112 Mo. App. 157; Sloan v. Dale, 90 Mo. App. 87; Fry v. Fry, 119 Mo. App. 476; Cole v. Fitzgerald, 132 Mo. App. 17; Rose v. Mayes, 122 S. W. 770; Cowell v. Roberts, 79 Mo. 221; Smith v. Myers, 19 Mo. 434; Hart v. Hart's Admr., 41 Mo. 445; Hayden v. Parsons, 70 Mo. App. 496; Moore v. Renick, 95 Mo. App. 202; Baird v. Railroad, 146 Mo. 281; 2 Thompson on Trials (1 Ed.), sec. 1663; Koch v. Hebel, 32 Mo. App. 103; Ramsey v. Hicks, 53 Mo. App. 195; Bosard v. Powell, 79 Mo. App. 184; Finnell v. Gooch, 59 Mo, App. 209; Noeninger v. Vogt, 88 Mo. 589; Healey v. Simpson, 113 Mo. 340. (2) Moreover, the evidence was sufficient to justify the jury in finding that there was an express contract on the part of deceased to compensate plaintiff for her services. Sloan v. Dale, 90 Mo. App. 89; Cole v. Fitzgerald, 132 Mo. App. 17; Fry v. Fry, 119 Mo. App. 476; McMorrow v. Dowell, 116 Mo. App. 289; Hayden v. Parsons, 70 Mo. App. 496; Birch v. Birch, 112 Mo. App. 157; Cowell v. Roberts, 79 Mo. 221; Koch v. Hebel, 32 Mo. App. 103; Bosard v. Powell, 79 Mo. App. 184; Ronsiek v. Boverschmidt's Admr., 63 Mo. App. 421. (3) Even if Mrs. Kerby agreed to compensate respondent or provide for her by will, and even if there were no other evidence of an intention to pay for the services in question, nevertheless respondent may recover the value of her services in this action against the administrator. Koch v. Hebel, 32 Mo. App. 110; Hall v. Getman, 121 Mo. App. 630.

BROADDUS, P. J.—The proceedings began in the probate court. The plaintiff filed a demand against the estate of Mrs. Eliza A. Kerby, for work and labor as housekeeper and attendant, including cooking, washing and nursing performed at the special instance and request of the deceased, between September 7, 1897, and September 6, 1907, five hundred and twenty weeks at six dollars per week, $3120.

Taylor v. Hudson.

The plaintiff was the niece of Mrs. Kerby. John R. Kerby was Mrs. Kerby's husband and they had no children. During the life of the husband, who died in the year 1898, he and his wife requested plaintiff to come to their home in Carrollton at which time the latter was about sixteen years of age and living with her parents near Bogard in the county. Both Kerby and his wife were no longer young and were in declining health. Plaintiff went to school at first for about two years, after which she expressed her intention of returning to her father's home. But she was induced to remain with the understanding that she would be clothed and furnished a piano with musical instruction. During Mr. Kerby's life he paid for all plaintiff's clothing and bought her a piano. After he died plaintiff expressed her intention of returning to her home, but at the solicitation of Mrs. Kerby continued to be with and care for until her death for a period of ten years. The evidence shows, that during these years Mrs. Kerby paid plaintiff nothing and that her father furnished her clothing with the exception of some purchased by herself from the proceeds of her labor for a short time in a printing office and store, and in making collections for a telephone company. It was shown that Mrs. Kerby in speaking of plaintiff's working outside her house, said that she had to have money.

The plaintiff during the ten years mentioned performed for Mrs. Kerby valuable service. She did most of the cooking, washing and housekeeping and nursed Mrs. Kerby in her long continued illness. A more faithful service could scarcely have been obtained, and that Mrs. Kerby highly valued it there is no doubt.

It is not contended that plaintiff did not perform in the main the services for which she asks compensation, but it is insisted that plaintiff being a near relative to Mrs. Kerby and no agreement that she should be paid for such services, the law presumes that they were rendered gratuitously as a member of the family.

And it is further insisted that if it should be found that there was any contract that plaintiff was to receive compensation for her services there was no showing as to the date when the liability for them began.

During the lifetime of Mr. Kerby the evidence tends to show, that he regarded her being a near relative of his wife and as such a member of his family. He sent her to school, clothed her, and bought her a piano, which acts did not indicate that he regarded her as a servant, but such as the ordinary man bestows on the members of his own family. But after his death Mrs. Kerby treated plaintiff differently she did not even buy her necessary clothing and in order to earn a little money of her own she worked for others for a short time. The fact that the father furnished the clothing is a strong circumstance going to show that plaintiff was not regarded as a member of the family of Mrs. Kerby. If plaintiff was regarded by Mrs. Kerby as a member of her family we are at a loss to know why during all the years of faithful attendance to her wants, and services rendered for her, Mrs. Kerby did not treat her as such, by providing her clothing and other things customary in the family relation. And it is incredible that plaintiff under such circumstances would have rendered the service without the expectation of some compensation. It was shown that Mrs. Kerby said that she had always told plaintiff that she would be amply provided for; that she was not able to care for herself and could not get along without her; that nobody would do anything for her; and when plaintiff went to her own home she would request her by telephone to come back that she could not do without her; that she intended to compensate her by her will; and that she intended to leave all her property to her at her death.

The statement of Mrs. Kerby and the conduct of the parties we think were sufficient to show an implied contract, that plaintiff was to receive pay for her services. The evidence of such a contract may be proved

by circumstances. [Fitzpatrick v. Dooley, 112 Mo. App. 165; Koch v. Hebel, 32 Mo. App. 103.]

But if Mrs. Kerby promised to compensate plaintiff for her service, which the evidence tends to prove, the promise was sufficient to support an action for specific performance. [Sharkey v. McDermott, 91 Mo. 647.] And she has also her remedy at law for the value of such services. [Koch v. Hebel, supra; Hall v. Getman, 121 Mo. App. 630.]

We believe there was sufficient evidence to show that the liability of Mrs. Kerby to pay for plaintiff's services arose when she began them at Mrs. Kerby's request on the death of Mr. Kerby.

The case was submitted to the jury on proper instructions and as there was evidence at least tending to support the verdict of the jury we are not at liberty to disturb the judgment. Affirmed. All concur.